## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESETERN DISTRICT OF NORTH DAKOTA

(1) WATERWORKS, LLC, a North Dakota
limited liability company,

        Plaintiff,

v.

(2) DYAD ENVIRONMENTAL, LLC, an
Idaho limited liability company,

        Defendant.

Civil Action No. 1:16-CV-60

## COMPLAINT

Plaintiff WaterWorks, LLC requests judgment in its favor against Defendant Dyad Environmental, LLC for money damages and equitable relief. In support of its claims, WaterWorks, LLC states the following:

## PARTIES

1.     Plaintiff WaterWorks, LLC ("WaterWorks") is a limited liability company organized under North Dakota law, having its principal place of business in Florida.

2.     The members of WaterWorks and their respective states of citizenship are as follows:

    a.   Joshua Holwell, citizen of the State of Minnesota.

    b.   Kent Holwell, citizen of the State of Florida.

    c.   Brent Lansberg, citizen of the State of Ohio.

    d.   Reece Lansberg, citizen of the State of Florida.

3.     Defendant Dyad Environmental, LLC ("Dyad") is a limited liability company organized under Idaho law, having its principal place of business in Rexburg, Idaho.

4.  The members of Dyad and their respective states of citizenship are as follows:

   a.  Daniel Ross McNair, citizen of State of Idaho

   b.  Ross McNair, citizen of the State of Idaho.

   c.  Jake McNair, citizen of the State of Idaho.

   d.  Jason Duncan, citizen of the State of Idaho.

## JURISDICTION AND VENUE

5.  Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332, because Plaintiff WaterWorks is a limited liability company organized under North Dakota law and having its principal place of business in Florida, and Defendant Dyad is a limited liability company organized under Idaho law and having its principal place of business in the State of Idaho. WaterWorks and Dyad and their members are diverse.

6.  The amount in controversy, without interest, costs or attorneys' fees, exceeds $75,000.00 as specified by 28 U.S.C. § 1332.

7.  Defendant Dyad is subject to the *in personam* jurisdiction of this Court because it has submitted to the jurisdiction of the State of North Dakota pursuant to North Dakota Rule of Civil Procedure 4(B)(2)(A) by transacting business in North Dakota.

8.  Venue is proper in this District of North Dakota pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this claim occurred in Killdeer, Dunn County, North Dakota, and also under 1391(b)(3) because Defendant Dyad is subject to this Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

9.  WaterWorks, LLC is an entity affiliated with other business that are or have been engaged in the salt water injection well business in the oil and gas, exploration, development and production area in Montana and North Dakota known as the Bakken Oil Field ("Bakken").

10.     Dyad Environmental, LLC is in the business of environmental remediation and the development of technologies and processes to treat toxic and harmful chemicals that are produced as the result of hydraulic fracturing drilling.

11.     In late 2013 and early 2014, WaterWorks and Dyad engaged in preliminary discussions aimed at reaching an agreement regarding WaterWorks' potential financial contributions that would fund the final stage of Dyad's development of its reclamation and waste treatment technology known as the Convergyx Cuttings Ceramic System.

12.     The Convergyx Cuttings Ceramic System ("technology") is an oilfield waste (water and solid) reclamation and treatment technology designed for use and deployment in the oil and gas drilling industry. It was designed to be deployed by mobile treatment units, or specially fabricated trailers, that would treat drill cuttings on drill pads in the Bakken Oil Field.

13.     These initial discussions between WaterWorks and Dyad did not result in an agreement regarding WaterWorks' financing the completion or application of Dyad's technology.

14.     Without WaterWorks' financial assistance, Dyad experienced difficulty fabricating, assembling and equipping Dyad's prototype mobile mixer processing trailer ("Trailer") that would facilitate the treatment of waste using Dyad's new technology.

15.     In approximately June 2014, Dyad, acting through its representative, Daniel McNair, reinitiated dialogue with WaterWorks by contacting its representative, Joshua Holwell, and asking WaterWorks to fund Dyad's completion of the Trailer and to pursue a business relationship with Dyad. In June and July 2014, over the phone and through email communications, Dyad, through Dan McNair and Jake McNair, who was then Dyad's acting CEO, made several representations to WaterWorks, primarily through its representative, Joshua

Holwell, regarding the technology and WaterWorks' potential contributions to funding the Trailer's completion.

16.     Dyad represented to WaterWorks that the development of its Convergyx mobile treatment technology was complete and that the field testing phase of that technology could begin shortly if only WaterWorks would contribute money to Dyad to fund the final fabrication of the prototype Trailer and purchase related equipment.

17.     Dyad represented to WaterWorks that its contributions would not only complete the prototype Trailer but would finance Dyad's deployment and field testing of it with Triangle Petroleum and Stat Oil, two oil drilling companies who were eager to use the Trailer to test the technology in North Dakota.

18.     Dyad represented to WaterWorks that these two projects would generate substantial profits and that if WaterWorks funded the completion of the Trailer, Dyad would allow Waterworks to share in the profits generated in the Triangle Petroleum and Stat Oil projects.

19.     Dyad further represented to WaterWorks that if WaterWorks funded the completion of the Trailer, Dyad would enable WaterWorks to obtain a territory license agreement of the technology and become the services and sales entity that would perform treatment services with that technology.

20.     Dyad represented to WaterWorks that Dyad would negotiate in good faith with WaterWorks to facilitate WaterWorks' licensing of the technology or the creation of a new operating entity that Dyad and WaterWorks would combine to form, and which would operate and license the technology.

21.    Dyad represented to WaterWorks that if, for any reason, those negotiations between Dyad and WaterWorks regarding the establishment of a permanent business relationship were to fail, then Dyad would repay the contributions of money, labor and materials that WaterWorks would make to Dyad for the completion and successful deployment of its prototype Trailer.

22.    Dyad and WaterWorks agreed, in July 2014, that WaterWorks would contribute money to Dyad necessary to purchase materials, chemicals, and equipment that would enable Dyad to deploy the Trailer and that WaterWorks would contribute time, labor, and expertise to assist Dyad in the Trailer's operation on the Triangle and Stat projects. They agreed that in return, WaterWorks would receive fifty percent (50%) of the net profits from the Triangle and Stat Oil projects, and that, at WaterWorks' discretion, Dyad would either reimburse WaterWorks for its contributions made on Dyad's behalf or account for those contributions in a territory license agreement that would be concluded between the two. Dyad and WaterWorks also agreed that if Dyad was unable to repay WaterWorks for its contributions promptly from the proceeds of the Triangle and Stat projects, those contributions would be treated as a loan that Dyad would be obligated to repay within one year, with the Trailer being collateral for that loan.

23.    WaterWorks performed under its agreement with Dyad in July and August 2014 by contributing approximately $106,414.33 in cash and in-kind contributions to Dyad, at Dyad's request, for the completion and equipping of the Trailer so that it could become operational and successful at the Triangle and Stat oil wellsites. WaterWorks' contributions funded fabrication work, the purchase of key equipment items, such the Trailer's conveyor equipment, and the reimbursement of miscellaneous expenses related to the Trailer's completion.

24.     In furtherance of its intentions to do business with Dyad, WaterWorks caused to be formed a new entity, Bakken Cuttings, LLC, for the purpose of facilitating its prospective relationship with Dyad and licensing Dyad's reclamation and treatment technology in the Bakken Oil Field.

25.     In July 2014, WaterWorks contributed $74,926.00 to Dyad by causing that amount to be wired to Ox Industrial, located in Rigby, Idaho, to credit Dyad's account with Ox Industrial so that Ox Industrial would perform final fabrication and equipping work on the Trailer. See attached Exhibit "A".

26.     In July 2014, WaterWorks, at Dyad's behest, purchased conveyor equipment for $7,530.00 from Midwest Equipment in Milwaukee, Wisconsin, for installation on the Trailer, and incurred an expense of $1500.00 in causing that conveyor equipment to be transported to Dyad's yard in Killdeer, North Dakota.

27.     WaterWorks also purchased supplies to be used at the Trailer's initial wellsite deployments at a cost of $1,780.57.

28.     Additionally, in July and August 2014, WaterWorks contributed approximately 200 hours in onsite labor and consulting work during the testing of the Trailer that was directly related to the Trailer's operation, having a value of approximately $17,600 in labor costs and consulting fees.

29.     This onsite labor and consulting work was performed at the Triangle Petroleum wellsite near Williston, North Dakota, and at the Stat Oil wellsite, also in North Dakota, where the Trailer was deployed and operating.

30.     In connection with its onsite consulting, WaterWorks incurred $35.33 in additional travel expenses, $127.90 in meal charges and $2,914.53 in vehicle mileage charges.

31.     WaterWorks would not have made these cash and in-kind contributions to Dyad but for Dyad's representations that if WaterWorks made these contributions, Dyad would share in the profits of the technology and enable WaterWorks to obtain the right to license that technology, and that Dyad would reimburse WaterWorks' for the value of it contributions.

32.     In July 2014, WaterWorks obtained an assignment from Ox Industrial, a primary fabricator of the Trailer, of its rights to the Trailer in the amount of $74,926.00. Dyad was aware of this assignment.

33.     WaterWorks' contributions to Dyad enabled the completion of the Convergyx System's prototype Trailer, which in turn enabled Dyad to perform its contracts with Triangle Petroleum and Stat Oil by deploying the Trailer to their drilling sites.

34.     The performance of the Trailer and mobile treatment technology at the Triangle Petroleum and Stat Oil wellsites was far less optimal than Dyad had represented to WaterWorks on multiple occasions. The technology failed to work as Dyad had represented it would because Dyad was unable to produce a chemical equation that would treat the cuttings in a cost-efficient manner. Statoil asked Dyad to leave its drill sites because Dyad's technology failed to perform as Dyad had predicted to Stat Oil. Dyad's technology similarly failed at the Triangle drill sites.

35.     Following the technology's poor performance and Dyad's failure to demonstrate the financial viability of its technology, WaterWorks did not make any further contributions to Dyad, and discussions between the two companies concerning their future business relationship did not progress. WaterWorks did not obtain the right to license the technology and did not form a joint operating entity with Dyad.

36.     Dyad refused to repay WaterWorks for its substantial monetary and in-kind contribution.

37. WaterWorks has made demand upon Dyad on several occasions for Dyad to reimburse WaterWorks for the $74,926.00 it contributed directly to Dyad for the completion of the Trailer and the in-kind contributions of supplies, transportation costs, consulting and related expenses to that enabled the Trailer's completion and deployment, valued at approximately $31,488. Dyad has refused all demands.

38. Dyad received compensation from Triangle Petroleum and Stat Oil under its contracts with them for the use of the Trailer at their wellsites, but Dyad refused to share any of that compensation with WaterWorks despite committing to do so as a condition of WaterWorks' financial contributions that facilitated the Trailer's deployment.

39. In early 2015, Dyad, through one of its affiliates, agreed with WaterWorks that the Trailer would remain at the Deer Valley Trucking yard in Williston, North Dakota, for the benefit of WaterWorks, until Dyad repaid WaterWorks for WaterWorks' contributions to its development or some other arrangement satisfactory to WaterWorks could be achieved.

40. In approximately March 2015, Dyad caused the Trailer to be moved, without WaterWorks' knowledge or approval, to an unknown location, and thus interfered with WaterWorks' rights to the Trailer under its assignment from Ox Industrial and under WaterWorks' agreement with Dyad.

41. Upon information and belief, Dyad now possesses or knows who possesses the Trailer. Since its removal from the Deer Valley yard, Dyad has hindered Waterworks' efforts to locate the Trailer.

42. On May 22, 2015, when WaterWorks again asked Dyad to repay the money WaterWorks contributed to Dyad, Dyad responded by informing WaterWorks that, "Dyad is no longer operating as a business and is in the process of dissolution."

43.   Upon information and belief, Dyad continues to operate and has not dissolved.

44.   To date, WaterWorks has spent approximately $106,414.33 to finance the completion and initial deployment of Dyad's proprietary soil/water reclamation technology and its mobile treatment prototype Trailer for use in the oil and gas industry. Dyad has greatly benefited from WaterWorks' contributions but has failed to allow WaterWorks to share in the profits of that technology or to reimburse WaterWorks for those contributions in violation of its commitments to do so, but has instead improperly removed the Trailer to an unknown location and continues to conceal its location.

## COUNT 1: BREACH OF CONTRACT (FAILURE TO SHARE IN PROCEEDS)

45.   WaterWorks incorporates the foregoing paragraphs and allegations as fully set forth herein.

46.   Under North Dakota Law, the elements of an enforceable contract are that the parties were capable of contracting, that the parties consented to a lawful object, and that sufficient consideration existed for the agreement. N.D. CENT. CODE ANN. § 9-01-02. A breach of contract is a failure to perform all or any part of what is warranted or required in a contract. North Dakota Jury Instruction – Civil 50.

47.   WaterWorks and Dyad entered into an enforceable contract because both parties were capable of consenting, and they did in fact agree and consent to a lawful object, namely, that WaterWorks would contribute and loan money and in-kind services to Dyad to complete and equip the Trailer that would deploy and test Dyad's technology, in exchange for WaterWorks receiving a share in the proceeds of the Trailer's deployment to the Triangle Petroleum and Stat Oil wellsites in North Dakota and having the opportunity to participate in the further deployment of the technology.

48.     Dyad breached this contract by failing to remit to WaterWorks any share of the proceeds Dyad received from the Trailer's deployment to the Triangle Petroleum and Stat Oil wellsites.

49.     Dyad's breach has damaged WaterWorks, which is entitled to money damages reflecting its rightful share in the proceeds of the technology and all other relief, including direct, indirect, and consequential damages, to which it is entitled.

## COUNT 2: BREACH OF CONTRACT (FAILURE TO REPAY LOAN)

50.     WaterWorks incorporates the foregoing paragraphs and allegations as fully set forth herein.

51.     "A loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which the person borrowed." N.D. CENT. CODE. ANN § 47-14-01.

52.     WaterWorks delivered $74,926.00 to Dyad so that Dyad's Trailer could be completed and equipped, and Dyad agreed to return that sum to WaterWorks at a future time. WaterWorks' delivery of this amount to Dyad, indirectly to Dyad's creditor, Ox Industrial, on Dyad's behalf, constitutes a loan of money under the parties' agreement and under N.D. CENT. CODE. ANN § 47-14-01.

53.     Dyad has breached this contract by failing to repay this loan.

54.     Dyad's breach has damaged WaterWorks, which is entitled to full repayment of the loan along with interest and all other relief, including direct, indirect and consequential damages, to which WaterWorks is entitled.

## COUNT 3: UNJUST ENRICHMENT (WATERWORKS' CONTRIBUTIONS)

55.     WaterWorks incorporates the foregoing paragraphs and allegations as fully set forth herein.

56.     Under North Dakota Law, in order to recover for a claim of unjust enrichment, a plaintiff must prove:

     a.   an enrichment;

     b.   an impoverishment;

     c.   a connection between the enrichment and impoverishment;

     d.   absence of a justification for the enrichment and impoverishment;

     e.   absence of a remedy provided by law.

<u>Northstar Founders, LLC v. Hayden Capital USA, LLC</u>, 2014 ND 200, ¶ 53.

57.     WaterWorks gave Dyad $74,926.00 in cash and made non-cash contributions to Dyad worth $31,488.00 to Dyad to fund the completion and deployment of Dyad's soil/water reclamation mobile platform technology. Dyad has personally and directly benefited from and has been enriched by this capital infusion and these in-kind contributions that enabled this technology to become operational and commercially viable.

58.     Dyad's receipt and retention of these amounts has caused a directly corresponding detriment and impoverishment on the part of WaterWorks.

59.     Dyad has been unjustly enriched, without justification, by maintaining this benefit and enrichment at WaterWorks' expense and impoverishment. Dyad's retention of this benefit has caused and continues to cause injury to WaterWorks and is unjust under these circumstances.

60.     WaterWorks is entitled to $106,414.33, the amount of Dyad's unjust enrichment.

## **COUNT 4: UNJUST ENRICHMENT (DYAD'S PROFITS)**

61.     WaterWorks incorporates the foregoing paragraphs and allegations as fully set forth herein.

62.     Dyad has profited from the technology whose completion WaterWorks financed, and has been enriched by deploying and licensing the technology, by receiving proceeds from Triangle Petroleum and Stat Oil for their use of the Trailer.

63.     Dyad has failed to share those profits or compensation with WaterWorks in violation of its promise to do so.

64.     Dyad has been unjustly enriched, without justification, by maintaining this benefit and enrichment at WaterWorks' expense and impoverishment, and also by potentially retaining additional proceeds and profits generated by the Trailer following its improper removal from WaterWorks' possession. Dyad's retention of the benefits has caused and continues to cause injury to WaterWorks and is unjust under these circumstances.

65.     WaterWorks is entitled to an unknown amount that corresponds to Dyad's unjust enrichment from its failure to allow WaterWorks to share in the proceeds and profits of the technology.

## COUNT 5:    CONSTRUCTIVE TRUST

66.     WaterWorks incorporates the foregoing paragraphs and allegations as fully set forth herein.

67.     The imposition of a constructive trust compels a person who unfairly holds a property interest to convey such interest to the rightful owner." Schroeder v. Buchholz, 2001 ND 36, 622 N.W.2d 202. The two elements of a constructive trust are (1) unjust enrichment, and, (2) a confidential relationship. Id.

68.     Dyad has been unjustly enriched at the expense and to the detriment of WaterWorks by not sharing the profits from technology and by retaining the $106,414.33 WaterWorks gave Dyad under the clear impression, created by Dyad, that WaterWorks would

obtain the licensing rights to that technology, and that if a business relationship was not consummated, Dyad would repay WaterWorks the amount of its contributions.

69.     WaterWorks and Dyad enjoyed a confidential relationship when WaterWorks transferred those funds to Dyad, and in transferring those funds, WaterWorks reposed trust and confidence in the integrity and fidelity of Dyad based upon Dyad's conduct and representations.

70.     WaterWorks is entitled to a constructive trust upon the property and assets of Dyad, including the Trailer, in the amount of to $106,414.33, and an amount corresponding to WaterWorks' rightful share in the proceeds and profits from the technology, and is entitled to title in Dyad's property equivalent to that amount.

## COUNT 6:    EQUITABLE LIEN

71.     WaterWorks incorporates the foregoing paragraphs and allegations as fully set forth herein.

72.     A court may impose an equitable lien upon the property of a defendant in favor of a plaintiff to prevent an unjust enrichment. Where property is held by one person subject to an equitable lien, the person having the equitable lien can enforce it by a proceeding in equity. Martian v. Martian, 399 N.W.2d 849 (N.D. 1987)

73.     Dyad has been unjustly enriched and has benefited at the direct expense of WaterWorks through its refusal to repay the money WaterWorks contributed to Dyad for the completion of the Trailer and through its refusal to allow WaterWorks to share in the profits of the technology.

74.     WaterWorks is entitled to an equitable lien against the Trailer and its components, or other property of Dyad may possess equivalent to the sum of $106,414.33, and the rightful profits and compensation Dyad received from the technology and should have forwarded to WaterWorks.

## COUNT 7: CONVERSION (WATERWORKS' CONTRIBUTION)

75.     WaterWorks incorporates the foregoing paragraphs and allegations as fully set forth herein.

76.     Conversion is the wrongful taking, destruction, or detention of personal property from the owner or other person entitled to its possession, or the exercise of dominion over the property inconsistent with or in defiance of the rights of that person. North Dakota Jury Instructions – Civil – 7.10.

77.     Dyad has wrongfully deprived WaterWorks of $106,414.33 belonging to WaterWorks by refusing to repay that amount and has impaired WaterWorks' possessory rights to that money through its wrongful assumption and exercise of authority over that amount and through its continual refusal to pay WaterWorks the $106,414.33, which rightfully belongs to WaterWorks.

78.     Dyad's conversion of the $106,414.33 has injured WaterWorks, and WaterWorks is entitled to restitution.

## COUNT 8: CONVERSION (THE TRAILER)

79.     WaterWorks incorporates the foregoing paragraphs and allegations as fully set forth herein.

80.     Dyad has wrongfully exercising dominion and control over the Trailer to the exclusion of WaterWorks, in violation of the rights of WaterWorks, which is entitled to its possession, and has thereby become liable for conversion.

81.     Dyad's conversion of the Trailer has damaged WaterWorks, which is entitled to restitution and a return of the Trailer.

## COUNT 9:    VIOLATION OF THE UNIFORM VOIDABLE TRANSACTIONS ACT

82.    WaterWorks incorporates the foregoing paragraphs and allegations as fully set forth herein.

83.    Under the Uniform Voidable Transactions Act, N.D.C.C. ch 13-02.1, (the "Act"), a creditor may bring a cause of action against a debtor if that creditor has claim and right to payment against the debtor and the debtor has transferred its assets with the actual intent to hinder, delay or defraud the creditor from obtaining its right to payment.

84.    WaterWorks is a creditor under the Act and has a claim and right of payment against Dyad, which is a debtor under the Act, in the amount of $106,414.33, because it owes that amount to WaterWorks, having received that amount as a loan and being obligated to pay that amount to WaterWorks under the foregoing claims.

85.    By seeking its own dissolution, Dyad has transferred its assets with the actual intent to hinder, delay and defraud Waterworks by avoiding its obligation to repay Waterworks the debt it owes, and has thereby violated the Act.

86.    By causing the Trailer to be removed to a location unknown to WaterWorks, Dyad has interfered with WaterWorks' ability to collect on its claim and right to payment by taking possession of the Trailer.

87.    Dyad's voidable asset transfers, in violation of the Act, have caused damage to WaterWorks by preventing WaterWorks from collecting the debt Dyad owes, entitling WaterWorks to all of the remedies set out in N.D.C.C. ch 13-02.1-07, including attachment of Dyad's assets, avoidance of Dyad's transfers, an injunction prohibiting Dyad from further asset transfers, appointment of a receiver to take charge Dyad's property, and any other relief the circumstances may require.

## RELIEF REQUESTED

88.     WHEREFORE, WaterWorks, LLC requests relief from this Court to address these wrongs, to-wit: money damages for the injuries sustained by WaterWorks as a result of Dyad Environmental, LLC's conduct; repayment and interest on its loan, attachment against the Trailer and any assets unlawfully transferred by Dyad; the imposition of a constructive trust upon Dyad's property; an equitable lien on the Trailer; restitution; an injunction against further transfer or disposition of Dyad's assets; appointment of a receiver to take charge of the Trailer and other property of Dyad; pre and post-judgment interest accruing; costs and attorney fees; and all other relief to which Plaintiff is entitled at law and in equity.

Respectfully submitted,

C. Michael Daily
North Dakota Bar No. 06906
DAILY & WOODS, P.L.L.C.
58 S. 6th Street
Ft. Smith, AR 72901
(479) 782-0361
(479) 782-6160 (fax)
Email: mdaily@dailywoods.com

-- AND --

D. Benham Kirk, Jr., OBA No. 5044
DOERNER, SAUNDERS, DANIEL
& ANDERSON, L.L.P.
105 N. Hudson, Suite 500
Oklahoma City, OK 73102-4805
(405) 319-3506
(405) 319-3536 (fax)
Email: dbkirk@dsda.com
**ATTORNEYS FOR PLAINTIFF**
***(Pro hac vice motion will be filed once case number
has been assigned)***